# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

| | |
|---|---|
| Tonia Hardyway, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| v. | **(Jury Trial Demanded)** |
| Denis McDonough, in his official capacity as Secretary, United States Department of Veterans Affairs, | |
| Defendant | |

Plaintiff, through undersigned counsel, for her Complaint against the Defendant, alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. For all times relevant to this Complaint, Plaintiff Tonia Hardyway, Ph.D. (Dr. Hardyway) is a Black female, domiciled in Davidson County, and a current employee of the Defendant with the Tennessee Valley Healthcare System (TVHS), United States Department of Veterans Affairs (VA) (collectively "Agency").

2. The VA is an agency of the executive branch of the United States government.

3. Denis McDonough is the Secretary of the VA and is an appropriate defendant in this action pursuant to 42 U.S.C. § 2000e-16(c).

4. Dr. Hardyway brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

5. The events and actions complained of below occurred in Nashville (Davidson County) and Murfreesboro (Rutherford County), Tennessee.

6. At all relevant times, Defendant was a covered employer under Title VII of the Civil Rights Act and employed Dr. Hardyway.

7. This Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. § 1343 (jurisdiction over civil rights cases). This Court has personal jurisdiction

over Defendant Denis McDonough, in his official capacity, because, at all times relevant, Dr. Hardyway worked for Defendant in Nashville and Murfreesboro, Tennessee.

8. Venue is proper pursuant to 28 U.S.C. § 1391 because Hardyway worked for the Agency in Davidson and Rutherford Counties, Tennessee, and all or a substantial part of the events or omissions giving rise to the claims occurred within the jurisdiction of the Middle District of Tennessee.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9. On or about October 28, 2016, Dr. Hardyway commenced the EEO process when she made initial contact with the Agency's Office of Resolution Management (ORM).

10. After the informal counseling period ended, on January 24, 2017, Dr. Hardyway filed a Formal Complaint of Discrimination against the Agency, case number 200I-0626-2017100569.

11. On or about March 8, 2017, ORM issued a Notice of Partial Acceptance of the complaint filed on January 24, 2017.

12. On or about July 10, 2017, EEO Investigator Douglas Hobdy, Jr. issued ORM's Investigative Report.

13. Dr. Hardyway then requested a hearing before an Administrative Judge (AJ) with the U.S. Equal Employment Opportunity Commission (EEOC).

14. On April 4, 2018, the then-assigned EEOC AJ issued an Acknowledgment and Order, EEOC case number 490-2017-00171X.

15. Dr. Hardyway subsequently filed four motions to add like or related claims, which were separately ruled upon by the AJ. The first two were granted.

16. The AJ denied Dr. Hardyway's third motion to amend and referred it back to the Agency for further processing. Dr. Hardyway is waiting for the Agency to issue a Final Agency Decision those claims.

17. On or about June 3, 2021, Dr. Hardyway filed a Fourth Motion to Add Like or Related Claim as follows:

> Whether the Agency engaged in a per se act of retaliation when, on April 8, 2021, TVHS Director Jennifer Vedral-Baron discussed the specifics of Dr. Hardyway's EEO complaint during a VISN 9 WebEx webinar entitled Directors' Diversity Discussion.

18. On July 23, 2021, the AJ denied Dr. Hardyway's Fourth Motion to Amend, and ordered the Agency to continue processing Dr. Hardyway's complaint.

19. After a hearing on Dr. Hardyway's claims, on September 17, 2021, the AJ delivered his oral ruling telephonically.

20. On or about October 14, 2021, the AJ issued an Order entering judgment for the Agency.

21. On or about October 22, 2021, the Agency's Office of Employment Discrimination Complaint Adjudication issued its Final Order, which included notification that Dr. Hardyway could choose to file a civil action within 90 days of receipt of the Final Order if an appeal to the EEOC's Office of Federal Operations (OFO) had not been filed. The Final Order incorporated the AJ's October 14, 2021, Order, as well as the allegation raised in Dr. Hardyway's Fourth Motion to Add Like or Related Claim.

22. Dr. Hardyway did not appeal the Final Order to the EEOC OFO.

## GENERAL ALLEGATIONS

23. Dr. Hardyway started with the VA as a full-time employee on October 15, 1996.

24. Dr. Hardyway is a Licensed Clinical Social Worker, Certified Case Manager, Board-Certified Diplomate in Clinical Social Work, and is credentialed by the Academy of Certified Social Workers.

25. Dr. Hardyway received her Bachelor of Science in Psychology from Vanderbilt University in May 1991, her Master of Science in Social Work from the University of Tennessee School of Social Work in May 1996, and her Doctorate in Public Administration from Tennessee State University in December 2018.

26. Dr. Hardyway entered on duty as Assistant Chief, Social Work Service (SWS), on January 27, 2013.

27. Dr. Hardyway's then-supervisor was SWS Chief Violet Cox-Wingo.

28. SWS Chief Cox-Wingo is a Black woman.

29. Dr. Hardyway's Assistant Chief duties were initially limited because she was still the Operation Enduring Freedom/Operation Iraqi Freedom/Operation New Dawn

(OEF/OIF/OND) program manager and was responsible for those duties until her replacement was hired.

30. Dr. Hardyway's responsibilities for the OEF/OIF/OND programs ended in or about October 2013.

31. One of the programs under the auspices of the SWS was the Community Based Care Program (CBCP). The CBCP program consisted of the following programs: Contract Adult Day Healthcare; Contract Nursing Home (CNH) Program; Homemaker/Health Aide Program; Community Residential Care (CRC) Program; Non-Institutional Respite Program; Medical Foster Home Program; and Veterans Directed – Home & Community Based Services.

32. The CNH program was responsible for placing veterans in contract nursing home care in community nursing facilities at the Agency's expense.

33. On or about June 9, 2015, Holly Ellis with Compliance contacted Dr. Hardyway because Chief Cox-Wingo was not available. Ms. Ellis told Dr. Hardyway that it appeared that two social workers in the CNH program, Steve Pharris and George Sudberry, documented social work visits on Veterans that had already passed away. Dr. Hardyway immediately reported this information to Chief Cox-Wingo. Dr. Hardyway was never assigned to follow-up on the allegations of fraudulent documentation and fraudulent billing.

34. Both Mr. Pharris and Mr. Sudberry are Caucasian males.

35. The CBCP and all of the programs under its umbrella – including the CNH program and its social workers, including Mr. Pharris and Mr. Sudberry – were managed by Larry Murray, the CBCP Program Manager.

36. Mr. Murray is a Caucasian male.

37. For all times relevant to this Complaint, Chief Cox-Wingo never assigned Dr. Hardyway to oversee the CBCP and its programs, and prior to August 2015, Dr. Hardyway never had any supervisory responsibility over the CBCP.

38. As a result of Ms. Ellis' report, on or about September 16, 2015, the Agency convened an Administrative Investigative Board (AIB).

39. The AIB was tasked with inquiring into the facts and circumstances of the following allegations:

a) Medical record falsification; b) Erroneous documentation; c) Inadequate oversite [sic] of the CRC and/or CNH programs and individual providers; d) Program noncompliance with the Regulations/VHA Handbook; e) Patient safety issues; f) Behavior in violation of TVHS and Federal Standards of Ethical Conduct; g) Misuse of government time and misuse of a government vehicles by documenting site visits after the Veteran(s) expired.

40. On or about April 25, 2016, AIB 15-04 issued a Report of Investigation.

41. The AIB found serious problems in the CBCP, particularly the Community Health Program, including lack of oversight by SWS and Nursing leadership.

42. The AIB report specifically identifies Larry Murray as one of the people who should be disciplined.

43. On July 22, 2016, TVHS announced Dr. James Wells as TVHS Acting Chief of Staff.

44. The same day, even though Dr. Wells had no knowledge of what occurred, Dr. Wells relieved Dr. Hardyway of her duties as SWS Assistant Chief and directed Dr. Hardyway to report to the Credentialing Service, a non-clinical service.

45. Also on July 22, 2016, TVHS announced Dr. Michael Sullivan-Tibbs as the Acting SWS Chief.

46. On July 25, 2016, Dr. Hardyway started her duties in Credentialing, initially at the TVHS Murfreesboro campus.

47. Being in Murfreesboro, which is approximately 45 minutes away from Nashville, was a hardship for her, so she asked to work in Nashville.

48. The entire time that Dr. Hardyway was detailed to Credentialing, TVHS never made it clear to Dr. Hardyway who her supervisor was.

49. On or about August 11, 2016, the Agency moved Dr. Hardyway up to the Nashville campus. The Agency put her in an office with three other people in it; she had no chair, no computer, no phone, and no key to the office. The Agency never told Dr. Hardyway what her day-to-day duties would be. Whatever tasks she was given were administrative, such as filing and copying. The VA cut off her access to its electronic systems, including her access to the online timekeeping system. If she needed leave, she had to submit her requests in paper form, but was never told who was supposed to sign off on those requests.

50. On August 12, 2016, Jennifer Vedral-Baron joined TVHS as its Director.

51. Director Vedral-Baron is a Caucasian female.

52. The Health System Director is responsible for everything that occurs, all the programs, and all the people within a VA Health Care System. Overseeing and managing TVHS is the Health System Director's responsibility.

53. On or about August 17, 2016, the Agency detailed Dr. John Nadeau to the position of Acting Deputy Chief of Staff.

54. Dr. Nadeau is a Caucasian male.

55. On September 6, 2016, and without warning, the Agency removed Dr. Hardyway from all SWS email groups; until then, she had access to, and was receiving, SWS-related emails.

56. On October 6, 2016, Dr. Sullivan-Tibbs denied Dr. Hardyway's request to attend Case Management training.

57. On October 10, 2016, the Agency detailed Jennifer Silva (from Texas) into Dr. Hardyway's former position as TVHS SWS Assistant Chief.

58. Jennifer Silva is a Caucasian female.

59. On October 17, 2016, Dr. Hardyway noticed there was an SWS Veterans Affinity email group started by and comprised of only white men.

60. On October 18, 2016, Dr. Hardyway reached out to and met with the TVHS EEO Program Manager, Diana Dilkes. During their meeting, Ms. Dilkes tells Dr. Hardyway that she would not be in this situation if she wasn't a black woman.

61. Also on or about October 18, 2016, TVHS announced Catovia Rayner as the new SWS Acting Chief. Ms. Rayner is a Black female. She was moved to TVHS from Spokane, Washington.

62. On October 19, 2016, Anthony Redferin with TVHS Human Resources failed to provide answers to Dr. Hardyway's inquiry as to how long she would be in Credentialing.

63. On October 24, 2016, the Agency instructed Dr. Hardyway to remove her title "Assistant Chief, SWS" from her email signature block.

64. Also on October 24, 2016, Dr. Hardyway noticed that TVHS had allowed Dr. Don Pirraglia – who was moved out of his position as Chief of Physical Medicine and

Case 3:22-cv-00037  Document 1  Filed 01/19/22  Page 6 of 13 PageID #: 6

6

Rehabilitation because of an allegation of sexual harassment (among other allegations) – to retain the title on his email signature block. Dr. Pirraglia is a Caucasian male.

65. On October 31, 2016, Director Jennifer Vedral-Baron, during the Opening Meeting of a Joint Commission survey visit, broadcast from the Nashville VA campus to the Murfreesboro VA campus, said that the Murfreesboro campus "was like a plantation."

66. Director Vedral-Baron knew her plantation statement was inappropriate and hostile.

67. Director Vedral-Baron was so concerned about her plantation statement that she thought she might have to resign.

68. On November 22, 2016, ORM notified TVHS Director Vedral-Baron that Dr. Hardyway had filed an EEO Complaint.

69. On December 6, 2016, Jeremy Hillard sent an email to Dr. Hardyway indicating that the Chief of Staff requested that she amend her VA Pulse pages (a VA-only Facebook-type resource for VA employees) where she was designated as Assistant Chief, SWS.

70. On or about December 28, 2016, Dr. Hardyway noticed that she was not listed on the SWS roster, while several Caucasians who were also either removed from SWS or subjects of the AIB investigation were still listed.

71. On or about January 23, 2017, Director Vedral-Baron announced Dr. Nadeau as the TVHS Chief of Staff.

72. On February 2, 2017, ORM District Manager Robbie Barham sent TVHS Director Vedral-Baron, by email, a letter indicating that Dr. Hardyway had filed a Formal Complaint of Discrimination.

73. On February 13, 2017, Larry Murray was "welcomed back" to SWS as the Community Based Care Team (CBCT) Coordinator, a position of leadership and prestige.

74. On or about March 2, 2017, Director Vedral-Baron received notice that ORM had issued a partial acceptance of Dr. Hardyway's EEO complaint.

75. On March 13, 2017, Dr. Hardyway requested permission to attend the American Case Management Association conference. Her request was ignored.

76. The VA is comprised of 23 regionalized Veterans Integrated Service Networks (VISN). TVHS is in VISN 9. Within VISN 9 alone, there are two Health Care Systems with

seven VA Medical Centers, 10 outpatient clinics, 41 Community Based Outpatient Clinics, and eight Vet Centers.

77. In or about early April 2017, both TVHS and VISN 9 leadership was overwhelmingly Caucasian; most of those were male.

78. According to Agency policy, only an employee's Service Chief or first line supervisor are authorized to approve an employee's timesheets and leave requests.

79. Dr. Sullivan-Tibbs and Jeremy Hillard signed almost all of Dr. Hardyway's time and attendance forms representing that they were Dr. Hardyway's supervisor.

80. Jeremy Hillard was Chief of Staff Nadeau's Administrative Officer and never in Dr. Hardyway's chain of command. Mr. Hillard is a Caucasian male.

81. On April 11, 2017, Chief of Staff Nadeau proposed to remove Dr. Hardyway from her position as Assistant Chief, SWS, based on a single charge of Failure to Provide Adequate Program Oversight. The charge was supported by 12 specifications.

82. The charge of Failure to Provide Adequate Program Oversight and its 12 specifications all related to the CBCP.

83. On June 1, 2017, the Agency's EEO counselor notified Director Vedral-Baron that an EEO investigator had been assigned to investigate Dr. Hardyway's EEO complaint.

84. On June 12, 2017, Dr. Hardyway submitted her written response to the Agency's proposed removal to Director Vedral-Baron.

85. On or about June 14, 2017, Director Vedral-Baron prepared and submitted an EEO Affidavit / Interrogatory regarding Dr. Hardyway's EEO complaint.

86. On June 20, 2017, Dr. Hardyway presented an in-person oral reply to the proposed removal to Director Vedral-Baron.

87. On July 18, 2017, Director Vedral-Baron sustained the charge of Failure to Provide Adequate Program Oversight and mitigated the removal to a demotion to the position of Social Worker.

88. The only VA employees with first-hand knowledge of the illegal documentation of visits on dead Veterans - Mr. Sudberry, Mr. Pharris, and Mr. Murray, all of whom are Caucasian, received no sanction or discipline whatsoever. None were referred

for criminal prosecution, none were referred to the Agency's Office of Inspector General, and no action was taken against their professional licenses.

89. The only two employees to be proposed for disciplinary action as a result of the AIB were Black women – Dr. Hardyway and SWS Chief Cox-Wingo. SWS Chief Cox-Wingo was eligible to, and did, retire.

90. Dr. Hardyway timely appealed Director Vedral-Baron's decision to the United States Merit Systems Protection Board (MSPB).

91. By virtue of no longer being in management, Dr. Hardyway was eligible for, and did become, a member of the union.

92. On February 20, 2018, Dr. Hardyway was one of three people to interview for a 90-day detail as the Acting Women's Veteran Program Coordinator.

93. The panel that interviewed Dr. Hardyway scored her the highest of any of the candidates.

94. Nevertheless, on March 4, 2018, Chief of Staff Nadeau selected Carolyn Smith for the 90-day detail to the Acting Women's Veteran Program Coordinator position.

95. Carolyn Smith is a Caucasian female.

96. Carolyn Smith was less qualified for the Acting Women's Veteran Program Coordinator position than Dr. Hardyway.

97. Per the negotiated agreement between the VA and the Union, Dr. Hardyway should have been selected for that detail. But the Agency never notified the Union.

98. Chief of Staff Nadeau's selection of Carolyn Smith violated Article 12 of the Master Agreement with the Union.

99. On or about March 7, 2018, Dr. Hardyway applied for the Supervisory Women Veterans Program Manager GS-13 position in Nashville, Tennessee, at TVHS.

100. Chief of Staff Nadeau was the selecting official for the Supervisory Women Veterans Program Manager position.

101. Dr. Hardyway interviewed and advanced to the second round of interviews for the Supervisory Women Veterans Program Manager position.

102. Chief of Staff Nadeau participated in the second round of interviews for the Supervisory Women Veterans Program Manager position.

103. Chief of Staff Nadeau scored Dr. Hardyway lower than the other raters, and his score for Dr. Hardyway was lower than his scores for the other candidates.

104. Chief of Staff Nadeau selected Ms. Smith for the Supervisory Women Veterans Program Manager position.

105. On September 30, 2018, MSPB Administrative Judge (AJ) Sharon J. Pomeranz reversed the Agency's decision demoting Dr. Hardyway, holding that "There is simply no credible evidence that the appellant had program responsibility over the CBCP during the time period for which the agency is alleging that she failed to provide adequate oversight" and "Even the agency's chief witness in support of its charge, Mr. Murray, did not support its position that the appellant was responsible for oversight of the CBCP."

106. The Agency subsequently filed a Petition for Review of AJ Pomeranz's decision, restored Dr. Hardyway's pay to its pre-demotion level, but refused to restore Dr. Hardyway to the SWS Assistant Chief position and refused to give any other monetary relief such as backpay. The MSPB appeal is still pending.

107. TVHS adheres to the VA's Zero Tolerance Policy as well as associated antidiscrimination laws by addressing claims of harassment at the facility level regardless of whether the employee does or does not file an EEO complaint.

108. Zero Tolerance means the employee has an obligation to report the harassment and the facility has an obligation to address the allegations and take effective/corrective action to prevent the behavior from continuing.

109. On April 8, 2021, Director Vedral-Baron was a presenter during a VISN 9 WebEx webinar entitled "Directors' Diversity Discussion."

110. Dr. Hardyway, along with hundreds of other VA employees, was invited, and attended, the WebEx webinar.

111. The email invitation described the webinar as a "discussion on diversity with the Medical Center Directors of VISN 9. This promises to be a transparent dialogue which details their journeys, challenges and commitments towards diversity."

112. During the webinar, Director Vedral-Baron, talked about Dr. Hardyway's case in great detail.

113. Specifically, Director Vedral-Baron referenced and discussed her plantation comment, why she made the comment, her claim that the statement was "not derogatory," what happened in the immediate aftermath of her statement, her fear that she would have to resign because of her comment and the reaction to it, that it "has come up in court cases since then," and her feeling that she had "paid her dues" since then.

114. While Director Vedral-Baron did not reference Dr. Hardyway by name, there is no question whatsoever that she was referring to the matters raised in this Complaint.

## COUNT ONE
### (Disparate Treatment Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as Amended)

115. Hardyway incorporates the allegations contained in the foregoing paragraphs as though fully set forth.

116. Defendant's actions as alleged constitute discrimination on the basis of race, color, and gender in violation of Title VII, specifically 42 U.S.C. § 2000e-2(a).

117. Defendant intentionally discriminated against Dr. Hardyway and acted with malice or with reckless indifference to Dr. Hardyway's federally-protected rights.

118. The effect of the allegations in the foregoing paragraphs has been to deprive Hardyway equal employment opportunities and otherwise adversely affected her status as an employee, because of her race, color, and gender.

119. As a result of Defendant's discrimination, Plaintiff has suffered damages including, without limitation, loss of wages and associated benefits, emotional distress, mental anguish, and loss of enjoyment of life for which she should be compensated in an amount to be determined at trial pursuant to 42 U.S.C. § 2000e *et seq*.

## COUNT TWO
### (Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as Amended)

120. Hardyway incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

121. Pursuant to 42 U.S.C. § 2000e-3(a) it is an unlawful employment practice for an employer to discriminate against any of its employees because the employee opposed any

practice that is an unlawful employment practice and/or participated in a protected activity, such as pursuing an EEO complaint.

122. Defendant's actions as alleged constitute discrimination on the basis of race, color, and gender in violation of Title VII, and specifically 42 U.S.C. § 2000e-3(a).

123. As a result of Defendant's unlawful retaliation, Plaintiff has suffered monetary damages for which she should be compensated in an amount to be determined at trial pursuant to 42 U.S.C. § 2000e *et seq*.

## COUNT THREE
### (Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, as Amended)

124. Dr. Hardyway incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

125. Dr. Hardyway's workplace was so permeated with the discriminatory acts described above, and the conduct of Defendant and its employees was severe and pervasive such that it created a hostile, abusive, or offensive work environment or unreasonably interfered with Dr. Hardyway's work performance.

126. Defendant is vicariously liable for the actions of its employees in this case.

127. As a result of Defendant's discriminatory, hostile work environment, Dr. Hardyway has suffered damages including, without limitation, loss of wages and associated benefits, emotional distress, mental anguish and loss of enjoyment of life which she should be compensated in an amount to be determined at trial.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

1. Declare that the Defendant violated the Plaintiff's rights under Title VII of the Civil Rights Act of 1964.

2. For actual damages;

3. For pecuniary and non-pecuniary compensatory damages in a just and reasonable amount;

4. For punitive damages, if available, in a just and reasonable amount;

5. For an Order directing the Defendant to take such measures as are reasonable and necessary to ensure that unlawful employment practices like those described above are eliminated and do not recur;

6. For Plaintiff's attorney's fees, costs, and expenses;

7. For such other and further relief as the Court deems reasonable and just.

**JURY TRIAL REQUESTED**

Plaintiff requests that the Court set this case for a jury trial.

DATED this 19th day of January, 2022.

Respectfully submitted,

/s Jeffrey H. Jacobson
**JACOBSON LAW FIRM**
Jeffrey H. Jacobson (*Pro Hac Vice* Application Forthcoming), AZ State Bar No. 019502
570 N. Columbus Blvd., Suite B
Tucson, AZ 85711
(520) 834-8034
(520) 844-1011 (fax)
jeff@jacobsonlawfirm.net

/s Anne Bennett Hunter
**COLLINS & HUNTER PLLC**
Anne Bennett Hunter BPR # 022407
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615.724.1996
615.691.7019 (fax)
anne@collinshunter.com
*Attorneys for Plaintiff*