UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| Tonia Hardyway,<br><br>  Plaintiff(s),<br><br>v.<br><br>Denis McDonough, in his official capacity as Secretary, United States Department of Veterans Affairs,<br><br>  Defendant. | Case No. 3:22-cv-00037<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

Plaintiff, through counsel, opposes Defendant's Partial Motion to Dismiss.

## I. BRIEF HISTORY OF PLAINTIFF'S CLAIMS

On October 28, 2016, Plaintiff Dr. Tonia Hardyway ("Plaintiff" or "Complainant") made initial contact with the Agency's Office of Resolution Management (ORM) to initiate the Equal Employment Opportunity (EEO) process. Exhibit A at 0043.[1] ORM issued her Notice of Right to File a Formal Complaint of Discrimination (Formal Complaint) on January 24, 2017. *Id.* Plaintiff filed her Formal Complaint the same day. Exhibit A at 0002-0007.

## II. STANDARD OF REVIEW

A Federal Rule of Civil Procedure 12(b)(6) motion requires the Court to construe the complaint in the light most favorable to the Plaintiff, accept all the Complaint's factual allegations as true, and determine whether "it appears beyond doubt the plaintiff can prove no set of facts in

---

[1] Exhibit A contains excerpts of the Report of Investigation (ROI) prepared by ORM. "Exhibit A" followed by a number refers to the ROI pagination on the bottom center of the page.

support of his claim which would entitle him to relief." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001); *Coffey v. Chattanooga-Hamilton County Hosp. Auth.*, 932 F.Supp. 1023, 1024 (E.D. Tenn. 1996). The Court may not grant a motion to dismiss simply based on a disbelief of a complaint's factual allegations. Rather, the Court must liberally construe the complaint in favor of the party opposing the motion and may dismiss the case only where no set of facts could be proved consistent with the allegations which would entitle the plaintiff to a recovery. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

**III. ARGUMENT**

Defendant first argues that Plaintiff's disparate treatment cause of action should be dismissed because it was not administratively exhausted. As discussed below, neither the facts of this case, nor the law, support Defendant's motion. Save for references to the Code of Federal Regulations, Defendant offered no authority whatsoever for its position.

> **A. Plaintiff is Entitled to Pursue Her Claim for Disparate Treatment Discrimination**

The Sixth Circuit Court of Court Appeals follows the "expected scope of investigation test." *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002). This means that the administrative exhaustion requirement "is not meant to be overly rigid, nor should it 'result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading.' . . . As a result, the EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (internal citations omitted); *see also Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010). Moreover, "the facts alleged in the body of the EEOC

charge, rather than merely the boxes that are marked on the charge, are the major determinants of the scope of the charge." *Bray v. Palm Beach Co.,* 907 F.2d 150 (6th Cir. 1990).

Defendant also neglects to mention the fact that the purpose of the administrative exhaustion requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation. *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) (citing *EEOC v. Bailey*, 563 F.2d 439, 447 (6th Cir. 1977).

Despite Defendant's request to narrowly construe the claims, this Court is empowered to construe Plaintiff's Complaint liberally to include the scope of Plaintiff's EEO administrative allegations which can reasonably be expected to grow out of her charges. Here, Plaintiff did not fail to raise claims of disability discrimination during the administrative process. The investigation, conducted by the Agency's Office of Resolution Management (ORM), which produced the ROI, clearly proves the Plaintiff raised numerous allegations of disparate treatment discrimination based on race during the EEO administrative process.

The cover sheet of Plaintiff's Formal Complaint identifies "Race – African American" as a basis for her claim of discrimination. Exhibit A at 0002, Block 8. In the narrative section of the same form, Plaintiff wrote, in part:

> - Being informed by VA TVHS EEO Program Manager/ADR Coordinator on 10/18/2016 that I would not be in my current situation (removed from role as Assistant Chief, SWS July 25, 2016), unless I was [one] of two black females.
> - Requirement to remove my job title as Assistant Chief, Social work Service from email signature block, while other similarly situated white VA TVHS are allowed to keep their title in their signature block.

*Id.* at Block 9.

Responsive to the "Remedies Sought" section of the Formal Complaint of Discrimination, Plaintiff attached an additional narrative seeking, among other items, "This compensation amounts

3

for the time in which VA TVHS failed to allow me the opportunity *as* the Assistant Chief, Social Work Service (GS-13) to serve in the role as the Chief, Social Work Service (GS--14) in her absence, **as other similarly situated white Assistant Chiefs of their service have been allowed**." *Id.* at 0004 (Emphasis added.)

The Agency's Informal Counseling notice, dated January 24, 2017, acknowledged Complainant's claims of race discrimination:

> The aggrieved party . . . stated she was discriminated against based on race and sex . . . .
>
> Ms. Hardyway states after reporting the unethical conduct of two male social workers (White, no names provided) on June 9, 2016, she was targeted and made the subject of an AIB. Ms. Hardyway stated she was discriminated against based on her race (Black) when the following events occurred: . . . .

Exhibit A at 0008-0037.

The Agency's Counselor Report, dated January 26, 2017, acknowledged Plaintiff's claims for race discrimination and even analyzed them. Exhibit A at 0077-0099.

The Agency, based solely on timeliness, excluded certain claims and investigated only hostile work environment and reprisal claims. Exhibit A 0165-0171. However, the hostile work environment claim was investigated on the basis of *race*, sex, and religion. Exhibit A at 0188.

Plaintiff's Written Affidavits, totaling more than 50 pages, repeatedly (31 times) references how she (as a Black woman) was treated differently than similarly-situated White employees and White managers/Responsible Management Officials. Exhibit A at 0199-0249. The Agency also asked pointed questions about race and disparate treatment to the Responsible Management Officials and witnesses in their Affidavits:

> Was the complainant's age, *race*, sex, religion, and prior EEO activity factors in the denial of her opportunity to attend the abovementioned training? Exhibit A at 255 (emphasis added.)

4

Can you identify any of the complainant's co-workers (similarly situated) not of the complainant's age (younger than she is), not of her *race*, not of her sex, not of her religion, and without prior EEO activity who was treated more favorably than the complainant was in regards to being allowed to perform the duties as the Assistant Chief of Social Work Services? Exhibit A at 258 (emphasis added.)

Are you aware of Complainant's race? If so, what do you believe her race to be? Exhibit A at 261, 265, 278, 283, 287.

Was this incident based on the complainant's age, race, sex, religion, prior EEO activity, or meant to subject her to harassment/hostile work environment? Exhibit A at 263, 266, 273, 275, 279, 285, 288.

Next, the Agency's EEO Counselor's Report outlines Plaintiff's claims and Management's responses to the same. Management's responses clearly indicate that it was aware that Plaintiff was raising claims of disparate treatment based on race.

**Claim - 1:** Other - Administrative Investigation Board (AIB)

**Brief Description of Claim:**

The aggrieved party, Ms. Tonia L. Hardyway stated she was discriminated against based on race and sex on February 23, 2016, and on July 22, 2016, when she was subjected to a biased AIB interview (no specific details provided). . . .

**Management's Response:**

. . . . I don't deny meeting with Ms. Hardyway, as I've had several conversations with her, . . . However, I did not state what she has quoted or attributed to me, that she and Chief of Social Work Service would not be in this situation unless they were two black females. I discussed with her the previous situations that the service (Social Work) was under investigation (Administrative Investigation Boards) and the previous situations employees raised in complaints directly to me had a racial component. The employees perceived that leadership in Social Work preferred to hired Black employees, and that Black employees were treated favorably over White employees. . . . It is unsettling to know Ms. Hardyway took everything out of context with what appears to be the intent of demonstrating that Leadership treated her or the Chief differently based on their race. The allegations that initiated the administrative investigation were brought to the attention of management, and management made a decision to convene a board to investigate. The decisions were not based on anyone s race, but instead, were based on the content and severity of the allegations.

Exhibit A at 0044-0045.

**Claim - 2:** Detail

**Brief Description of Claim:**

Ms. Hardyway stated on July 22, 2016 she was informed effective July 25, 2016, she would be removed from her position and detailed. Ms. Hardyway stated she was discriminated against based on race when the following events occurred:

*******************

**Claim - 3:** Working Conditions

**Brief Description of Claim:**

Ms. Hardyway stated on October 24, 2016, after reviewing the AIB recommendations she discovered a similarly situated White Male VA TVHS Chief (no name provided) had been provided better working conditions and accommodations during his removal related to an AIB investigation, as had similarly situated Assistant Chiefs. Ms. Hardyway stated she was discriminated against based on the following events: . . . .

The Agency's 'Management's Response' to Claims 2 and 3 were almost identical to its response to Claim 1. Exhibit A at 0046-0047. Even Claim 4, Plaintiff's harassment / hostile work environment claim (as couched by the Agency) contains ample allegations of disparate treatment based on race. Exhibit A at 0049-0057. Just some of the facts and allegations supporting claim 4 follow.

**Claim - 4:** Harassment/Hostile Work Environment (Non-Sexual)

**Brief Description of Claim:**
Ms. Tonia Hardyway, aggrieved party, stated on October 24, 2016, she obtaining [sic] a copy of the recommendations provided by the Administrative Investigative Board (AIB) investigation compliance concerns within the Social Work Services line and discovered what she deemed to be inherent bias and discriminatory actions taken against her based on the following:

1) Ms. Hardyway stated after reporting the unethical conduct of two male social workers (White, no names provided) on June 9, 2016, she was targeted and made the subject of an AIB. Ms. Hardyway stated she was discriminated against based on her race (Black) when the following events occurred:

6

a. Ms. Hardyway stated during a meeting with Ms. Diana Dilkes, EEO manager, on October 18, 2016, Ms. Dilkes stated Ms. Hardyway and the Chief of Social Work Service (SWS) (no name provided) would not be in this situation unless they were two black females.

b. Ms. Hardyway stated on June 9, 2015, she was notified by Compliance of erroneous documentation placed in medical records by White male social work staff.

c. Ms. Hardyway stated VA TVHS Leadership (no specific names provide) recommended an AIB aimed at investigating her and the Chief, SWS (two Black female leaders).

2) Ms. Hardyway stated on July 22, 2016 she was informed effective July 25, 2016, she would be removed from her position and detailed. Ms. Hardyway stated she was discriminated against based on race when the following events occurred:

a. Ms. Hardyway stated on July 22, 2016, she me with Dr. James Wells, Acting Chief of Staff, who issued her a Detail Memorandum which stated "Until further notice, you are being relieved from your role as Assistant Chief, Social Work Service including all clinical care responsibilities." Ms. Hardyway stated removing her role as VA TVHS Assistant Chief, Social Work Services was disparate treatment since similarly situated White employees (aforementioned personnel) have not been subjected to being removed from their roles.

b. Ms. Hardyway stated VA TVHS leadership's (no specific name provided) decision to remove her from her position as one of two black female leaders of a service line is unprecedented. Ms. Hardyway stated the action was also discriminatory since both Black leaders of a service were removed simultaneously. Ms. Hardyway stated in the past similarly situated White Chief and Assistant Chiefs in similar circumstances were not removed from their roles simultaneously. . . .

f. Ms. Hardyway stated she was not given the opportunity to continue in her role or serve as Acting Chief, Social Work Service as similarly situated White TVHS Assistant Chiefs had been provided during similar circumstances. Ms. Hardyway stated Ms. Gail Mauer, Ms. Linda Halperin, and Mr. John Henderson were all allowed to remain in their positions and were promoted to Acting Chiefs when their Chiefs were removed from their roles and detailed out of their service areas.

3) Ms. Hardyway stated she is being discriminated against based on the lack of response and interaction by management, as evidenced by the following events:
a. Ms. Hardyway stated since she reporting issues of concern June 9, 2015 related to the unethical conduct of two White male social workers, "management" has not had any discussion or interaction with her.

7

b. Ms. Hardyway stated since my reporting issues related to aforementioned two white male social workers, management has refused a scheduled meeting with her (no specific date or names of management officials provided).

c. Ms. Hardyway stated she has learned a similarly situated White male, Chief PM&RS (no specific name provided), has been allowed to communicate with VA TVHS Executive leadership and VISN staff (no names provided) while undergoing an AIB.

d. Ms. Hardyway stated numerous similarly situated White managers have been allowed to report on conduct, patient care, and performance issues related to their staff. Ms Hardyway stated these same White managers requests to meet with higher level executive leadership staff were not ignored and they were afforded the opportunity to meet with leadership to resolve staffing related issues. . . .

7) Ms. Hardyway stated was discriminated against when she was not provided the opportunity to continue in her role as Assistant Chief of Social Work service and/or Acting Chief Social Work Service. Ms. Hardyway stated in previous situations involving similarly situated personnel such as Ms. Gail Maurer (White Female), Assistant Chief, SWS; Mr. John Henderson (White Male), Assistant Chief, HR; and Ms. Linda Halperin (White Female), Assistant Chief, PM&RS, the aforementioned personnel were not subjected to such an isolating and demeaning process but instead were allowed to remain in their positions until the completion of investigations in their service areas, and were also promoted to Acting Chief of their services while their service Chiefs were detailed out of the service. Ms. Hardyway stated as Black Female she has not been treated the same as her similarly situated White counterparts, due to being treated as having an identical role and responsibility as her supervisor.

8) Ms. Hardyway stated she was discriminated against based on Race (Black) and Sex (Female) after being subjected to an investigation overseen and directed by VA TVHS Executive Leadership, VA TVHS Staff and VISN 9 Staff (no specific names provided) that all identify as White. Ms. Hardyway stated VA TVHS Health System Director, Ms. Suzanne Jene and Martin Traxler, and VA TVHS Executive Leaders (no specific names provided), all identify as White, and were responsible for selecting an all-White AIB panel, consulting with all-White VA TVHS ELR and Regional Counsel personnel. Ms. Hardyway stated all personnel directly involved in the investigation of the VA TVHS Social Work Service, to include the AIB Panel, information gathering and reviewing, and VISN 9 staff consulted, all identify as White. Ms. Hardyway stated similarly situated personnel Ms. Gail Mauer (White), Ms. Linda Halperin (White), Ms. Paula Kinsel (White), and Mr. John Henderson(White) have not undergone or been subjected to investigations/oversight by the leadership or consultants comprised solely of one race not identical or similar to their own.

Again, Management's Response to Claim 4 was the same as Claims 1 through 3.

Applying the expected scope of investigation test to this case, Plaintiff's factual allegations were more than sufficient notice that Plaintiff perceived herself to be a victim of disparate treatment discrimination based on her race. Other circuits follow this rule. *See, e.g., Deravin . Kerik*, 335 F.3d 195, 201 (2d Cir. 2003). *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996); *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

The Agency's lone argument – that no disparate treatment claim proceeded through the administrative process – is immaterial. *See* Doc. 28 at 6 of 10. Nevertheless, Plaintiffs are not barred from raising an uncharged claim in court simply because the EEOC failed to investigate an uncharged claim that reasonably grew out of claims in the complaint. *Dixon v. Ashcroft*, 392 F.3d 212, 219 (6th Cir. 2004). As the Sixth Circuit has held, the key purpose for the exhaustion requirement is to put the alleged wrongdoer on notice of the accusations. *Id.* at 217. Plaintiff's EEO complaint unquestionably alleged that, as a Black woman was treated differently than similarly situated White counterparts. Her detailed allegations, which included statutory language of disparate treatment discrimination, was more than sufficient to put the Agency on notice that she was claiming race discrimination. In the Sixth Circuit, a claim relating to employment discrimination included in an investigation which can reasonably be expected to grow out of the charge of discrimination, and claims like or reasonably related to the allegations contained in the EEO charge can be included in a complaint. As such, Defendant's claim that Plaintiff did not administratively exhaust her Title VII disparate treatment claim fails.

**B.     Defendant's Argument that Plaintiff Cannot Assert Retaliation Claims she has not Exhausted Also Fails**

Defendant first argues that Plaintiff should be limited to only the exhausted claims of retaliation; that is: 1) a March 4, 2018, non-selection to a 90-day detail as Acting Women's Veteran

9

Program Coordinator; and 2) an August 13, 2018, non-selection to the Supervisory Women Veterans Program Manager position. *See* Doc. 28 at 7 of 10. Once again, Defendant is incorrect.

On March 8, 2017, the Agency's ORM issued a Notice of Partial Acceptance of Plaintiff's EEO Complaint, *adding reprisal* to her complaint. Exhibit A at 0165-0171. Paragraph 10 of that Notice states that Plaintiff's complaint of discriminated raised the following claims:

Your client's complaint of discrimination raises the following claims:

Whether complainant was subjected to a hostile work environment based on age (over 40), race (black) and sex (Female), religion (Christian) **and reprisal (as evidenced by the following events:**

1. On February 23, 2016, Ms. Joanna, Walters, Safety and Value, provided complainant with erroneous information prior to her Administrative Board of Investigations (AIB) interview.

2. On June 9, 2016, complainant was targeted by facility leadership for an AIB after complainant reported unethical behavior of two employees.

3. On July 22, 2016, Dr. James Wells, Acting Chief of Staff, issued complainant a detail memorandum, detailing her from Social Work Service (SWS) to G328, a non-clinical area.

4. On July 25, 2016, complainant was detailed to an office, with four work stations, shared by three other employees, without a chair, telephone and without computer access.

5. On September 6, 2016, complainant was removed from key SWS email work groups.

6. On October 6, 2016, complainant was denied an opportunity to attend Case Management training.

7. On October 10, 2016, Jennifer Silva, was detailed into complainant's former positon, without notice to complainant.

8. On October 12, 2016, complainant was told not to enter her former office (no names provided).

9. From July 25, 2016 through October 10, 2016, Mr. Michael Sullivan-Tibbs, Acting Chief, SWS rarely interacted with complainant, or provided supervision.

10. On October 17, 2016 and on October 25, 2016, Catovia Raynor, Acting Chief, SWS, failed to respond to complainant's email.

10

Case 3:22-cv-00037   Document 39   Filed 05/16/22   Page 10 of 17 PageID #: 362

11. On October 18, 2016, the facility EEO PM, stated, complainant and the Chief of SWS "would not be in this situation (detailed) unless they were two black females."

12. On October 19, 2016, Mr. Anthony Reedin, Human Resources, failed to provide answers to complainant's request concerning the duration of her detail.

13. On October 24, 2016, complainant was instructed to remove her title "Assistant Chief, SWS from her email signature block. (No names provided).

14. On November 2, or November 3, 2016, Jennifer Vedral-Baron, Health System Director, stated Murfreesboro Campus "was like a large planation," and referred to workers as "busy bees."

15. From approximately August 7, 2016 to November 6, 2016, facility leadership failed to notify complainant of the AIB completion.

16. From December 2016 to present, Jeremy Hillard (JH), Chief of Staff, HR and other facility leadership failed to provide complainant feedback on her FY16 performance appraisal, functional statement, and self-assessment the complainant has submitted.

17. On December 6, 2016, JH instructed complainant to remove her designation as Assistant Chief, SWS, from a VA Pulse page, pending the outcome of the detail assignment.

18. From July 2016 to present, complainant was not allowed to perform the duties of Acting Chief, SWS.

Exhibit A at 0168-0169.[2]

Moreover, EEOC Administrative Judge Steven D. Townsdin, Federal Sector Hearings Unit, Memphis District Office, in his Pre-Hearing Order, accepted the following claims for adjudication:

//

//

//

---

[2] Event 3 was dismissed as a discrete act for lack of timeliness, but was accepted as related to the overall pattern of harassment and, therefore, was included for consideration by the Agency as part of Plaintiff's harassment/hostile work environment claim.

11

Issues for Hearing & Brief Descriptions of Complainant's Theories and Agency's Defenses

A. *Issues for Hearing*

Whether complainant was subjected to a hostile work environment based on age (over 40), race (black) and sex (female), **and reprisal**, as evidenced by the following events:

3. On July 22, 2016, Dr. James Wells, Acting Chief of Staff, issued complainant a detail memorandum, detailing her from Social Work Service (SWS) to G328, a non-clinical area.

4. On July 25, 2016, complainant was detailed to an office, with four work stations, shared by three other employees, without a chair, telephone and without computer access.

5. On September 6, 2016, complainant was removed from key SWS email work groups.

6. On October 6, 2016, complainant was denied an opportunity to attend Case Management training.

7. On October 10, 2016, Jennifer Silva, was detailed into complainant's former position, without notice to complainant.

8. On October 12, 2016, complainant was told not to enter her former office (no names provided).

9. From July 25, 2016, through October 10, 2016, Mr. Michael Sullivan- Tibbs, Acting Chief, SWS rarely interacted with complainant, or provided supervision.

10. On October 17, 2016, and on October 25, 2016, Catovia Raynor, Acting Chief, SWS, failed to respond to complainant's email.

11. On October 18, 2016, the facility EEO PM, stated, complainant and the Chief of SWS "would not be in this situation (detailed) unless they were two black females."

12. On October 19, 2016, Mr. Anthony Redferin, Human Resources, failed to provide answers to complainant's request concerning the duration of her detail.

13. On October 24, 2016, complainant was instructed to remove her title "Assistant Chief, SWS from her email signature block. (No names provided).

14. On November 2, or November 3, 2016, Jennifer Vedral-Baron, Health System Director, stated Murfreesboro Campus "was like a large planation," and referred to workers as "busy bees."

16. From December 2016 to present, Jeremy Hillard (JH), Chief of Staff, HR and other facility leadership failed to provide complainant feedback on her FY16 performance appraisal, functional statement, and self-assessment the complainant has submitted.

17. On December 6, 2016, JH instructed complainant to remove her designation as Assistant Chief, SWS, from a VA Pulse page, pending the outcome of the detail assignment.

18. From July 2016 to present, complainant was not allowed to perform the duties of Acting Chief, SWS.

19. On March 4, 2018, Complainant was not selected for a 90-day detail to the Acting Women's Veteran Program Coordinator position in reprisal for engaging in protected EEO activity.

20. On August 13, 2018, Complainant was not selected for the Supervisory Women Veterans Program Manager (Social Worker) GS-13 position, announcement number CBAJ-10146112-18-BPD in reprisal for engaging in protected EEO activity.

Exhibit B. (Emphasis added).

Finally, reprisal is also one of the "checked" boxes in ORM's Notice of Partial Acceptance of Plaintiff's EEO complaint sent to TVHS Director Vedral-Baron. Exhibit A at 0178-0180. Given the fact that the Agency itself considered all of these enumerated allegations as reprisal claims in the administrative investigative phase, and the EEOC adjudicated the above-referenced allegations as reprisal claims, the dye has been cast. Defendant offers no legal basis for reframing Plaintiff's allegations and claims, nor does any exist. Plaintiff's claims for reprisal were explicitly accepted for investigation, and are therefore fair game in this litigation. Defendant's argument that the two 2018 non-selection claims are the only reprisal claims before this Court should be rejected.

Next, the Agency argues that because Plaintiff's 'per se retaliation' claim has yet to be fully processed by the Agency, it should be excluded from the pending litigation. Because the Agency's Office of Employment Discrimination Complaint Adjudication (OEDCA) has yet to issue a Final Agency Decision (FAD) on that claim, the Agency's position is correct. However,

once the FAD is issued, assuming the FAD determines that Plaintiff failed to prove her claim, Plaintiff will have two options: 1) appeal the FAD to the EEOC's Office of Federal Operations within 30 days; or 2) file a civil action in U.S. District Court within 90 days. Therefore, Plaintiff may seek leave to amend her Complaint at the appropriate time.

To that end, on May 2, 2022, the Agency's OEDCA issued a FAD regarding Plaintiff's March 26, 2021, claims that she was subjected to a hostile work environment based on race, and reprisal for protected EEO activity, when: 1) On February 18, 2021, Complainant was not selected for the position of Social Worker Program Manager, GS-0185-14, Vacancy Announcement No. CBTG-4296-10981334-21-KL, GS-14; and 2) On February 19, 2021, the Chief of Staff and the Medical Center Director listed Complainant's position as a GS-12 position on an organizational chart. Exhibit C. Therefore, Plaintiff will be seeking leave to file an Amended Complaint to add these allegations.

Lastly, for the *first time*, Defendant raises (in essence) a choice of forum argument disguised in Rule 12(b)(6) language. Defendant claims that because the Merit Systems Protection Board (MSPB) examined and decided that Plaintiff's demotion (which the MSPB Administrative Judge overturned on its merits) was not motivated by retaliation. *See* Doc. 28 at 7-8 of 10. Complainant, however, can proceed with the claim that her demotion was motivated, in part or in whole, by reprisal under Title VII in federal court as a "mixed case" appeal. "Judicial review of an MSPB decision is generally in the Federal Circuit on the administrative record, 5 U.S.C. §§ 7703(b)(1), 7701(c)(1)-(3); where the employee also has claims under certain anti-discrimination laws, including Title VII, such cases proceed in district court, *id.* At § 7703(b)(2) (citing *id.* At § 7702), where the plaintiff is entitled to trial de novo of the facts regarding her discrimination claims. *Id.* At § 7703(c)." *Carrethers v. Speer*, 698 F. App'x 266, 270-71 (6th Cir. 2017); *see also*

14

29 C.F.R. § 1614.302(a)(2) (2016) (defining "mixed case appeal" as one in which an employee "alleges that an appealable agency action was effected, in whole or in part, because of discrimination"). Therefore, Plaintiff's claim that the Agency demoted her in reprisal for protected EEO activity is properly before this Court.

      **C.    Background Evidence of Acts Demonstrating Harassment / Hostile Work Environment Outside the Relevant Statute of Limitations is Admissible**

Plaintiff concurs with Defendant's argument that the first exhausted incident of harassment/hostile work environment is July 22, 2016. Doc. 28 at 8 of 10. However, that is not the end of the analysis. Federal employees "must initiate contact with a counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action." 29 C.F.R. 1614.105(a). Nevertheless, any acts of discrimination, hostile work environment, or reprisal occurring before the 45-day statute of limitations are relevant and admissible background evidence, though time-barred as to available relief. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116-117 (2002).

Defendant also claims that Plaintiff's exhausted hostile work environment claims end on March 8, 2017. Doc. 28 at 8 of 10. Not so. In fact, Defendant's Partial Motion to Dismiss concedes that Plaintiff has *also* administratively exhausted two 2018 non-selection allegations. *See* Doc. 28 at 6 of 10. Further, as discussed above, because of the OEDCA FAD, Plaintiff will be separately seeking leave to add two additional incidents alleging hostile work environment and reprisal. As articulated by the U.S. Supreme Court, incidents outside the 45-day statute of limitations are admissible as *background* evidence in support of Plaintiff's hostile work environment claim. Further, Plaintiff's administratively exhausted claims include those identified in Section B above, as well as the two 2018 non-selections. Additional incidents demonstrating the Agency's hostile work environment may also apply if leave to amend is granted.

15

### D. Dismissal is not the Appropriate Remedy

If the Court is inclined to grant Defendant's Partial Motion to Dismiss, either in whole or in part, it should give Plaintiff an opportunity to amend the complaint to cure any defects unless such leave would be futile. *Briscoe v. Eppinger*, No. 1:18-cv-02417, 2021 U.S. Dist. LEXIS 99350 (N.D. Ohio May 26, 2021).

## IV. CONCLUSION

Defendant misstates and mischaracterizes Plaintiff's claims, as well as the applicable law. Plaintiff put the Agency on ample notice, at the EEO administrative investigation phase, that she was pursuing a claim for disparate treatment based on her race. Further, under this Court's "expected scope of investigation test," construing Plaintiff's complaint liberally, encompasses her disparate treatment claims because they reasonably grow out of her original charge of discrimination. Lastly, Plaintiff properly exhausted her reprisal and hostile work environment claims. Any hostile work environment incidents outside the 45-day statute of limitations are admissible as background evidence. For these reasons, Defendant's Partial Motion to Dismiss should be denied.

Respectfully submitted this 16th day of May, 2022.

/s Jeffrey H. Jacobson
**JACOBSON LAW FIRM**
Jeffrey H. Jacobson, *Pro Hac Vice*
AZ State Bar No. 019502
570 N. Columbus Blvd., Suite B
Tucson, AZ 85711
(520) 834-8034
(520) 844-1011 (fax)
jeff@jacobsonlawfirm.net

/s Anne Bennett Hunter
**HUNTER LAW FIRM**
Anne Bennett Hunter BPR # 022407
101 Creekside Crossing, Suite 1700-307
Brentwood, TN 37027
(615) 592-2977
anne@hunteremploymentlaw.com
*Attorneys for Plaintiff*

Filed via CM/ECF this 16th day of May, 2022