IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TONIA HARDYWAY, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:22-cv-00037 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| DENIS MCDONOUGH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Partial Motion to Dismiss (Doc. No. 27, "Motion"). Plaintiff has filed a response (Doc. No. 38), and Defendant has filed a reply (Doc. No. 41). The Motion is ripe for review.

For the reasons discussed herein, Defendant's Motion will be **GRANTED** in part and **DENIED** in part.

### FACTUAL BACKGROUND[1]

### I. Pre-EEO Contact Experience

Plaintiff, Tonia Hardyway, is a black woman and a citizen of Davidson County, Tennessee. (Doc. No. 1 at 1). Defendant, Denis McDonough, is the current Secretary of the Department of Veteran Affairs ("VA"). (*Id.*). The current action stems from Plaintiff's employment with the VA, specifically at the Tennessee Valley Healthcare System ("TVHS"). (*Id.*). Plaintiff began working at the VA on October 15, 1996. (*Id.* at 3). She became the Assistant Chief of Social Work Service ("SWS") on January 27, 2013. (*Id.*).

---

[1] The facts set forth herein are alleged in Plaintiff's complaint (Doc. No. 1, "Complaint") and are accepted as true for purposes of the Motion.

The SWS ran a program known as the Community Based Care Program ("CBCP"). (*Id.* at 4). CBCP consisted of other smaller programs, including the Contract Nursing Home Program ("CNH"). (*Id.*). CNH was responsible for placing veterans in contract nursing home care in community nursing facilities at the VA's expense. (*Id.*). Larry Murray, a white male, was the CBCP Manager, in charge of supervising all CBCP programs. (*Id.*).

Around June 9, 2015, Holly Ellis—who worked in the VA's Compliance sector—informed Plaintiff that two white CNH social workers, Steve Pharris and George Sudberry, were documenting social-work visits with Veterans that had already passed away.[2] (*Id.*). Plaintiff immediately reported these actions to SWS Chief Violet Cox-Wingo. (*Id.*). In response, the VA convened an Administrative Investigative Board ("AIB") to investigate the fraudulent CNH activities. (*Id.*). Concluding in April 2016, the AIB investigation found serious problems in the CBCP, including a concerning lack of oversight by SWS. (*Id.* at 5).

On July 22, 2016, James Wells became the TVHS Acting Chief of Staff and Michael Sullivan-Tibbs became the Acting SWS Chief. (*Id.* at 5). The same day, Wells relieved Plaintiff of her SWS Assistant Chief duties and directed her to report to Credentialing Services. (*Id.*). Plaintiff began reporting for duty to Credentialing Services on July 25, 2016. (*Id.*). In August 2016, Jennifer Vedral-Baron, a white woman, joined TVHS as Director, and Dr. John Nadeau, a white man, took over as Acting Deputy Chief of Staff. (*Id.* at 6).

Plaintiff was removed from all SWS-related emails on September 6, 2016, and her request to attend Case Management training was denied in October 2016. (*Id.*). Also in October 2016, the

---

[2] The obvious implication, though not spelled out completely in the Complaint, is that based on this false documentation, CNH workers submitted fraudulent billing for work (social-work visits) that was never performed, inasmuch as they would not have completed social-work visits to anyone who was deceased.

VA detailed Jennifer Silva, a white woman, to take over Plaintiff's former position as SWS Assistant Chief. (*Id.*).

On October 18, 2016, Plaintiff met with TVHS's Equal Employment Opportunity ("EEO") Program Manager, who told Plaintiff that she would not have been demoted had she not been a black woman. (*Id.*). On October 24, 2016, the VA asked Plaintiff to remove the title "Assistant Chief, SWS" from her email signature block. (*Id.*). On October 28, 2016, Plaintiff commenced the EEO process, making initial contact with the VA's Office of Resolution Management ("ORM"). (*Id.* at 2).

## II. Post-EEO Contact Experience

On October 31, 2016, Director Jennifer Vedral-Baron described the Murfreesboro VA campus as being "like a plantation." (*Id.* at 7). On December 28, 2016, Plaintiff noticed the SWS roster no longer featured her name, while it did feature several white colleagues who either had been removed from SWS or were under AIB investigation. (*Id.*). On February 13, 2017, Mr. Murray entered the role of Community Based Care Team Coordinator, a leadership position. (*Id.*).

On April 11, 2017, Chief of Staff John Nadeau, a white male, proposed permanently removing Plaintiff from her position as SWS Assistant Chief based on the single charge of Failure to Provide Adequate Program Oversight relating only to CBCP. (*Id.* at 8). On July 18, 2017, Director Vedral-Baron sustained the Failure to Provide Adequate Program Oversight charge and demoted Plaintiff to the position of Social Worker. (*Id.*). Plaintiff timely appealed the demotion to the Merit Systems Protection Board ("MSPB"), and on September 30, 2018, MSPB Administrative Judge ("AJ") Sharon J. Pomeranz reversed the demotion. (*Id.* at 10). The VA filed a Petition for Review; it also restored Plaintiff's pay to its pre-demotion level, but it did not reinstate Plaintiff as SWS Assistant Chief, nor provide any other monetary relief. (*Id.*). Mr. Sudberry, Mr. Pharris, and

Mr. Murray did not receive sanction or discipline for the CNH billing fraud, of which only they had first-hand knowledge. (*Id.* at 8).

On February 20, 2018, Plaintiff interviewed for a 90-day detail as the Acting Women's Veteran Program Coordinator. (*Id.* at 9). She scored highest of the three candidates who interviewed, but Chief of Staff Nadeau selected Carolyn Smith, a white woman. (*Id.*). On March 7, 2018, Plaintiff applied for the Supervisory Women Veterans Program Manager GS-13 position, interviewing through two rounds. (*Id.*). Chief of Staff Nadeau was an interviewer and scored Plaintiff lower than any other evaluator and ultimately chose Ms. Smith for the position. (*Id.* at 9-10).

## III. EEO Process

After Plaintiff made initial contact with the VA's Office of Resolution Management ("ORM") on October 28, 2016, ORM notified TVHS Director Vedral-Baron that Plaintiff had filed an EEO complaint on November 22, 2016. (*Id.* at 2, 7). On January 24, 2017, Plaintiff filed a Formal Complaint of Discrimination against the VA. (*Id.* at 2). On February 2, 2017, ORM District Manager Robbie Barham notified Director Vedral-Baron that Plaintiff filed a Formal Complaint of Discrimination. (*Id.* at 7).

In early March 2017,[3] ORM issued a Notice of Partial Acceptance of the Formal Complaint of Discrimination, of which Director Vedral-Baron received notice. (*Id.* at 2, 7).

On July 10, 2017, EEO Investigator Douglas Hobdy, Jr. issued ORM's Investigative Report, and Plaintiff then requested a hearing before an EEOC AJ. (*Id.* at 2). On April 4, 2018, the EEOC AJ issued an Acknowledgement and Order, and Plaintiff subsequently filed three motions

---

[3] In Plaintiff's Complaint, she alleges that Director Vedral-Baron received notice of the Partial Acceptance on March 2 and that ORM issued the notice on March 8. The Court believes this is likely a typo, but the exact timing of ORM issuing the Notice and Director Vedral-Baron receiving it does not bear substantial weight in the Court's determination on the Motion.

to add like or related claims.(*Id.*). Then on June 3, 2021, Plaintiff filed a fourth motion to add a claim for a "*per se* act of retaliation" related to an event where Director Vedral-Brown referenced Plaintiff's federal court case on a VA Webinar entitled "Directors' Diversity Discussion." (*Id.* at 2-3).

On October 14, 2021, the AJ issued an order entering judgment for the VA. (*Id.*). On October 22, 2021, the VA's Office of Employment Discrimination Complaint Adjudication ("OEDCA") issued its Final Order, which included notification that Plaintiff could choose to file a civil action within 90 days, and it incorporated the AJ's October 14 Order and the allegation raised in Plaintiff's Fourth Motion. (*Id.*).

## PROCEDURAL BACKGROUND

Plaintiff filed her Complaint with this Court on January 19, 2022, within the 90-day window prescribed by the Final Order. (Doc. No. 1).

Plaintiff's present action contains three causes of action. Count I is for "Disparate Treatment Discrimination in Violation of Title VII of the Civil Rights Act of 1964," Count II is for "Retaliation in Violation of Title VII of the Civil Rights Act of 1964," and Count III is for "Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964." (*Id.* at 11–12).

Defendant requests that the Court dismiss some of these claims under Rule 12(b)(6) for the following reasons: (1) all allegations of disparate treatment discrimination should be dismissed for failure to administratively exhaust them; (2) all allegations of retaliation other than the two 2018 non-selections should be dismissed for failure to administratively exhaust them; and (3) all allegations of hostile work environment, except for those from the period between July 22, 2016,

and March 8, 2017, should be dismissed for failure to administratively exhaust them. (Doc. No. 28 5–9).

## LEGAL STANDARD

Defendant's Motion has been brought under Rule 12(b)(6). As discussed immediately below, this approach was proper.

As this Court has explained,

> Title VII of the Civil Rights Act is the exclusive judicial remedy for claims of discrimination (based upon race, color, religion, sex and national origin) in federal employment. *See Burnette v. Wilkie*, Case No. 1:18-cv-1179, 2019 WL 4452388, at * 7 (N.D. Ohio Sept. 17, 2019) (citing *Steiner v. Henderson*, 354 F.3d 432, 434 (6th Cir. 2003)). "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *Id.*

*Bryant v. Wilkie*, No. 3:18-cv-00104, 2020 WL 836547, at *2 (M.D. Tenn. Feb. 20, 2020). Administrative exhaustion serves two main purposes: promoting efficiency and protecting administrative agency authority by giving agencies "an opportunity to correct [their] mistakes." *Randolph*, 453 F.3d at 732 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

"To exhaust administrative remedies, a plaintiff must file an EEOC charge within 180 days of the alleged unlawful employment practice or, if the plaintiff has instituted proceedings with a state or local agency, within 300 days." *Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002). The Supreme Court has noted, "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cnty. v. Davis*, 139 S.Ct. 1843, 1851 (2019).

"The exhaustion of administrative remedies is a condition precedent to a Title VII . . . action." *Id.* at 351. "Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII . . . action." *Id.* That leads to the question of what rule of civil procedure

is the proper rule under which to seek such dismissal—a question that is not merely academic, because different rules implicate different standards and procedures for the resolution of motions to dismiss—not to mention the possibility of different preclusive effects. The question has been subject to considerable debate, at least with respect to contexts other than Title VII. *See, e.g., Morris v. Newberry Corr. Facility*, No. 11-10938, 2013 WL 865540, at *2 (E.D. Mich. Feb. 11, 2013) (discussing, in the context of a prisoner's civil rights case, the various possible rules under which a motion to dismiss for failure to exhaust might be brought), *report and recommendation adopted*, No. 11-CV-10938, 2013 WL 847520 (E.D. Mich. Mar. 7, 2013). But the Court is satisfied that, at least in the context of Title VII, "[m]otions to dismiss for failure to exhaust administrative remedies are appropriately brought under Rule 12(b)(6) because they are 'condition[s] precedent' to filing in federal court, rather than 'jurisdictional prerequisites' (which would instead implicate Rule 12(b)(1))." *Coats v. McDonough*, No. 3:20-CV-00298, 2021 WL 5846550, at *5 (M.D. Tenn. Dec. 9, 2021) (quoting *McKnight v. Gates*, 282 F. App'x 394, 397 n.2 (6th Cir. 2008)); *see also Dawson v. Loc. 189 United Ass'n of Plumbers & Pipefitters*, No. 2:21-CV-3478, 2022 WL 3356583, at *3 (S.D. Ohio Aug. 15, 2022) ("Because exhaustion is non-jurisdictional, however, a motion to dismiss based upon the failure to exhaust should be brought under Rule 12(b)(6), rather than under 12(b)(1).").

For purposes of a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all the factual allegations in the complaint as true, as it has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings

and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

One final principle should be kept in mind where dismissal is sought under Rule 12(b)(6) specifically for failure to exhaust administrative remedies: for dismissal to be appropriate, *the allegations in the complaint* (together with any of the materials referred to in the paragraph immediately hereabove) must make plain that a plaintiff is unentitled to relief because he failed to exhaust. *See, e.g., Flentall v. Morey*, No. 10-CV-13353, 2011 WL 6090156, at *4 (E.D. Mich. Aug. 25, 2011) (citing *Jones v. Bock,* 549 U.S. 199, 215 (2007)), *report and recommendation adopted*, No. 10-13353, 2011 WL 6102053 (E.D. Mich. Dec. 7, 2011).

## DISCUSSION

**I.**     **The Court is able to consider, among the various documents submitted by Defendant in support of the Motion, only the VA's Notice of Partial Acceptance and the VA's demotion decision.**

As stated above, in a motion to dismiss, the Court may not consider documents outside of the complaint unless they are explicitly referred to and integral to the complaint. *See Com. Money Ctr, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-336 (6th Cir. 2007). In support of his Motion, Defendant has filed seven documents. Three, attached to the memorandum in support of his motion (Doc. No. 28), are the VA's Notice of Partial Acceptance, the EEOC hearing transcript, and Plaintiff's Notice Regarding Withdrawn EEO Claims. A fourth is a Declaration from Kathleen Pholid (Doc. No. 29), to which are attached the final three of these seven documents: the VA's demotion decision, the MSPB appeal form, and the initial MSPB decision. In her response, Plaintiff additionally includes the ORM's Report of Investigation, the EEO's pre-hearing order, and the VA's final agency decision from May 2022.

Of those ten documents, only the VA's Notice of Partial Acceptance, the VA's demotion decision, the initial MSPB Decision, and the ORM's Report of Investigation are explicitly referred to in the Complaint. And of those, the Court concludes, only the Notice of Partial Acceptance and the VA's demotion decision are integral to the Complaint. Therefore, the Court will not consider the EEOC hearing transcript,[4] Plaintiff's Notice Regarding Withdrawn EEO Claims, the Declaration of Kathleen Pholid (or the MSPB appeal form or Initial MSPB decision attached thereto), or any of the documents included by Plaintiff with her response.

The Court will, however, consider the VA's Notice of Partial Acceptance and the VA's demotion decision as appropriate, as both documents are referred to the Complaint and integral to Plaintiff's claims.

## II. Plaintiff's claim of discrimination via disparate treatment has been administratively exhausted.

As to Plaintiff's Count I for discrimination via disparate treatment,[5] Defendant argues that Plaintiff failed to administratively exhaust any such claims. Defendant states that Plaintiff's original EEO complaint sought relief for "hostile work environment based upon a series of events between July 2016 and March 2017, and two non-selections in 2018 that allegedly occurred in retaliation for Plaintiff filing a EEO complaint." (Doc. No. 28 at 6). Defendant further states that "no disparate treatment claim proceeded through the administrative process." (*Id.*). In response, Plaintiff argues that the administrative exhaustion requirement is not meant to be rigid, and that an

---

[4] While Plaintiff does refer to the EEOC Hearing, she does not reference the transcript itself, so it cannot be said that Plaintiff referred to the document that Defendant attached to his Motion. *See, e.g., Comm. Money Ctr., Inc.*, 508 F.3d at 335–36.

[5] "'Disparate treatment' is an umbrella term used to refer to discrimination against an employee based on the employee's membership in a protected class." *Jordan v. Mathews Nissan, Inc.*, 539 F. Supp. 3d 848, 863 (M.D. Tenn. 2021). In disparate treatment cases, "the plaintiff is required to prove that the defendant had a discriminatory intent or motive." *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 985–86 (1988).

"EEOC complaint should be liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination." (Doc. No. 39 at 2 (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (internal citations omitted))). According to Plaintiff, her disparate treatment claim was within the scope of the EEOC investigation, and therefore was sufficiently exhausted.

In many instances, the question of whether a plaintiff failed to exhaust her remedies is really a question of whether the plaintiff's exhaustion—which would have been adequate had it been timely—was indeed timely. But with respect to Plaintiff's claim for discrimination based on disparate treatment, the question is different because Defendant does not make an issue as to the timeliness of anything Plaintiff did in an attempt to exhaust; here, the question is whether the claim was administratively exhausted *at all*, not whether it was *timely* brought before the EEOC or to this Court. Because the purpose of administrative exhaustion is not to ensure strict compliance, a court should construe an EEOC complaint "liberally." *Golden v. Mirabile Invest. Corp.*, 742 F. App'x 441, 445 (6th Cir. 2018). This means the Court here should ask whether Plaintiff alleged sufficient facts in her EEOC complaint to put the EEOC (and the VA) on notice of her disparate treatment claim. *See Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) ("The determinative inquiry in this case, therefore, is whether Dixon alleged sufficient facts in his EEOC Complaint to put the EEOC on notice of his retaliation claim, despite that he did not check the appropriate box on the EEOC's Complaint of Discrimination form."). The Court believes she has.

The Notice of Partial Acceptance, included with Defendant's Motion, states, "[Plaintiff] alleges disparate treatment during a VISN 9 investigation and the AIB process, specifically, panel membership composition, interviews, communications and scope of the investigations." (Doc. No. 28-1 at 1). The Notice further states that Plaintiff "added the following new events" that occurred

in January and February of 2017, and identifies one such additional event as "[o]n January 26, 2017, other service chiefs remained in their positons [sic] and roles, and were not detailed, despite being investigated, . . . [and] another detailed SWS Chief, pending the outcome of an investigation was returned to his position." (*Id.* at 2-3). This event is also included in Plaintiff's Complaint (Doc. No. 8-9) and appears to serve as (at least) one event underlying Plaintiff's disparate treatment claim.

From the substance of the Notice of Partial Acceptance, it is clear Plaintiff alleged facts suggesting disparate treatment of her as compared to her white coworkers, particularly that she was not allowed to return to her position in SWS during her investigation while white colleagues were either never disciplined or were detailed, but able to return to their position while being investigated. And that event is (at least one) of the factual bases upon which the Complaint grounds a claim of discrimination via disparate treatment. Accordingly, the Court finds that Plaintiff has exhausted her disparate treatment claim, and Defendant's Motion will be denied with respect to that claim.

**III.** **Defendant's Motion will be granted as to some of Plaintiff's retaliation claims and denied as to others.**

    **A.** *Plaintiff was required to exhaust only retaliation claims occurring before her EEO contact.*

Defendant next argues that Plaintiff has exhausted only two claims of retaliation: her March 4, 2018 non-selection to a 90-day detail as Acting Women's Veteran Program Coordinator, and her August 13, 2018 non-selection to the Supervisory Women Veteran's Program Manager

position. (Doc. No. 28 at 7). Plaintiff argues that her retaliation claims *were* exhausted, but in doing so, Plaintiff cites extensively to documents the Court has determined it will not consider.[6]

In any event, it appears to the Court that both parties misunderstand the exhaustion requirements for retaliation claims. Retaliation claims premised on alleged actions by the employer taken after the plaintiff's filing of an EEO charge are exempted from the exhaustion requirement. *See Kurtz v. McHugh*, 423 F. App'x 572, 576 (6th Cir. 2011) ("[R]etaliation claims are often excepted from this requirement because they arise after an EEO charge is filed, [whereas] retaliation claims based on conduct that occurred before the charge is filed must be included in that charge."); *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998). It is unclear to the Court what specific alleged actions Plaintiff asserts were in retaliation for her EEO complaint, since Plaintiff's Count II states that it "incorporates the allegations contained in the foregoing paragraphs" and does not further specify the relevant facts. (Doc. No. 1 at 11). To the extent that the allegedly retaliatory acts occurred after her formal complaint was lodged (on January 24, 2017), Plaintiff did not need to have separately exhausted those claims. To the extent that the allegedly retaliatory acts occurred before Plaintiff initiated contact with the EEO, Defendant is correct that Plaintiff cannot claim retaliation for incidents that occurred before she engaged in protected conduct. *See E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1070 (6th Cir. 2015) ("[A] Title VII claimant must show that his or her protected activity was a but-for cause of the adverse action by the employer."). Accordingly, Defendant's Motion will be granted as to the claim of retaliation premised on Director Vedral-Baron's statements and any claims of retaliation premised on adverse employment actions occurring *before* Plaintiff initiated contact with the EEO

---

[6] Plaintiff concedes that her "*per se* retaliation" claim based on Director Vedral-Baron's comments during a webinar on April 8, 2021 is still being processed by the VA, and therefore should be excluded from pending litigation. (Doc. No. 39 at 13).

but denied as to any claims of retaliation premised on adverse employment actions occurring *after* Plaintiff began the EEO process.

### B. *Plaintiff's claim for retaliation based on her July 2017 demotion to the position of social worker is appropriately before the Court.*

Defendant brings an additional challenge to Plaintiff's retaliation claims to the extent that Plaintiff intends to claim her demotion was in retaliation for filing her EEO complaint. Specifically, Defendant argues that Plaintiff chose to have that claim heard by the MSPB, which (according to Defendant) prohibits this Court from hearing it also. (Doc. No. 28 at 7-8). Defendant argues that this Court should not consider a retaliation claim premised on Plaintiff's demotion because "Plaintiff did not appeal the AJ's [unfavorable] decision" on such claim and because that claim is still pending on appeal in front of the MSPB based on an appeal of a separate issue brought by the VA. (*Id.*). In response, Plaintiff argues that her claim is a "mixed case," such that she can seek judicial review of the claim in a district court instead of appealing the decision of the MSPB AJ directly to the full MSPB.

> The Sixth Circuit has explained
>
> > In the Civil Service Reform Act, Congress set out a path for federal employees like [plaintiff] to challenge serious personnel actions (such as removal from service). The first stop is an appeal to the Merit Systems Protection Board. 5 U.S.C. § 7513(d). Then, if the employee is unsatisfied with the Board's decision, she can seek judicial review once the Board's order becomes final. *Id*. § 7703(a)(1). In general, judicial review of the Board's decisions is the job of the Federal Circuit—and only the Federal Circuit. *Id*. § 7703(b)(1)(A). But the path takes a different turn when the employee thinks that discrimination motivated the adverse personnel action. Rather than going to the Federal Circuit for judicial review, she follows the procedures described in the relevant anti-discrimination law—which is to say, she files a case in federal district court. *See id.* § 7703(b)(2) The discrimination cases that qualify for this different jurisdictional path are called "mixed cases." *Kloeckner*, 568 U.S. at 44, 133 S.Ct. 596; *see also* 5 U.S.C. § 7702(a)(1); 29 C.F.R. § 1614.302(a)(2) (defining "[m]ixed case appeals").
> >
> > To bring a mixed case, an employee must complain that she has been "affected by an action which [she] may appeal to the Merit Systems Protection

Board" and "allege[ ] that a basis for the action was [unlawful] discrimination." 5 U.S.C. § 7702(a)(1); *see id.* § 7703(b)(2). Thus, a mixed case has to be based on an action that is (1) appealable to the Board, and (2) motivated in part by discrimination.

*Fuerst v. Sec'y of the Air Force*, 978 F.3d 369, 371 (6th Cir. 2020).[7]

The procedure of these mixed cases has been explained succinctly by the D.C. Circuit:

> When a complainant appeals to the MSPB, either directly or after pursuing her claim with the agency EEO office, the matter is assigned to an Administrative Judge who takes evidence and eventually makes findings of fact and conclusions of law. *See* 5 C.F.R. §§ 1201.41(b), 1201.111. The AJ's initial decision becomes a final decision if neither party, nor the MSPB on its own motion, seeks further review within thirty-five days. *See* 5 C.F.R. § 1201.113. However, both the complainant and the agency can petition the full Board to review an initial decision. Should the Board deny the petition for review, the initial decision becomes final, *see* 5 C.F.R. § 1201.113(b); if the Board grants the petition, its decision is final when issued. *See* 5 C.F.R. § 1201.113(c). At this point, the complainant again has a choice: within thirty days of receiving a final decision from the MSPB, she can either appeal the discrimination claim to the EEOC, *see* 5 C.F.R. § 1201.157, or appeal the entire claim (or any parts thereof) to the appropriate district court. *See* 5 U.S.C. § 7703(b), 5 C.F.R. § 1201.175, 29 C.F.R. § 1614.310(b). Finally, if the MSPB fails to render a judicially reviewable decision within 120 days from the filing of a mixed case appeal, the aggrieved party can pursue her claim in federal district court. *See* 5 U.S.C. § 7702(e)(1)(B).

---

[7] Although the Court could find no case on point, it has no doubt that a case alternatively qualifies as a mixed case if it alleges that a basis for the action was unlawful *retaliation* (as opposed to unlawful *discrimination*). This is because retaliation is considered a form of discrimination for purposes of civil rights statutes, *e.g.*, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (stating in the context of Title IX that "[r]etaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination"), and thus for procedural purposes usually is treated just like non-retaliation (*i.e.*, general) forms of discrimination—and, when treated differently from general discrimination, tends to be treated differently in a way that favors the plaintiff. *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 569 (6th Cir. 2019) ("Although we had previously held that the same requirements [as to what amounts to an actionable adverse employment action] apply to Title VII retaliation claims and Title VII discrimination claims, the Supreme Court made clear in *Burlington Northern* that [such] requirements for a retaliation claim are in fact considerably less stringent." (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59–69 (2006) (rejecting the Sixth Circuit's contrary view))).

*Butler v. West*, 164 F.3d 634, 638–39 (D.C. Cir. 1999). *See also Kloeckner v. Solis*, 568 U.S. 41, 54 (2012) ("'[I]f at any time after the 120th day following [an employee's filing] with the Board . . . , there is no judicially reviewable action[,] . . an employee shall be entitled to file a civil action' in district court under a listed antidiscrimination statute.") (citing 5 U.S.C. § 7702(e)(1)(B))).

Here, Plaintiff's challenge to her demotion—first made in the ongoing MSPB proceedings— is premised on her claim that it was in retaliation for her filing an EEO complaint, and therefore qualifies as a "mixed case." *See* 5 U.S.C. § 7702(a)(1).[8] Additionally, as alleged in Plaintiff's Complaint, she "timely appealed" Director Vedral-Baron's decision to demote her to the MSPB. (Doc. No. 1 at 9). Then, on September 30, 2018, the MSPB AJ issued an initial decision on the appeal, which the VA subsequently appealed on October 30, 2018. (*Id.* at 10). Finally, both parties acknowledge that—at least as of the filing of this case in January 2022— that appeal is still pending. (Doc. Nos. 1 at 10, 28 at 10). The lapse between the VA's appeal to the full MSPB and the filing of this lawsuit was substantially longer than 120 days; thus, when Plaintiff filed this civil action, she had the right to "file a civil action" alleging the same claim that formed the basis of her appeal to the MSPB AJ. *See Kloeckner*, 568 U.S. at 54. Plaintiff's claim of retaliation premised on her demotion from SWS—the same act she originally appealed to the MSPB AJ—is appropriately before this Court, and Defendant's Motion will therefore be denied.

### IV. Plaintiff's claim of hostile work environment has been administratively exhausted.

Defendant's final argument is that Plaintiff has exhausted her claim of hostile work environment only for incidents occurring between July 22, 2016 and March 8, 2017. (Doc. No. 28 at 8). Plaintiff's response states, "Plaintiff concurs with Defendant's argument that the first exhausted

---

[8] The agency employment actions entitling an employee to appeal a case to the MSPB include "(1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough." 5 U.S.C. § 7512.

incident of harassment/hostile work environment is July 22, 2016." (Doc. No. 39 at 15). Plaintiff's response then says that this "is not the end of the analysis" and goes on to argue that Plaintiff's claims are subject to the 45-day limitations period ascribed by 29 C.F.R. 1614.105(a), which says that an aggrieved person who believes they have been discriminated against "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory, or in the case of personnel action, within 45 days of the effective date of the action." And, according to Plaintiff, any claim occurring before the 45-day limitations period is "admissible" as "background evidence." (Doc. No. 39 at 15). Plaintiff also argues that she has administratively exhausted incidents of hostile work environment that occurred after March 8, 2017, including her "two 2018 non-selection[s]." (*Id.*).

Both parties misunderstand the law (regarding the requirement to exhaust and the time limits for so doing) applicable to hostile work environment claims. The Supreme Court in *Nat. R.R. Passenger Corp. v. Morgan* made clear that hostile environment claims are different from claims based on discrete acts, such as claims for retaliation or discrimination. 536 U.S. 101 (2002). The Supreme Court stated,

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. *See* 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348–349 (3d ed.1996) (hereinafter Lindemann) ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence"). The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ("As we pointed out in Meritor [Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986),] 'mere utterance of an ... epithet which engenders offensive feelings in a[n] employee,' *ibid.* (internal quotation marks omitted), does not sufficiently affect the conditions of employment to implicate Title VII"). Such claims are based on the cumulative effect of individual acts.

*Id.* at 115.[9] The Court went on to explain,

> Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability. That act need not be the last act. Subsequent events may still be part of the one claim, and a charge may be filed at a later date and still encompass the whole. Therefore, a court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period.

*Id.* at 122; *see also Taylor v. Donahoe*, 452 F. App'x 614, 619 (6th Cir. 2011); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009) ("A claim under Title VII is timely if filed within 300 days of any single act contributing to the hostile work environment.").

*Morgan* (and *Taylor* and *Barrett*) stated this principle in addressing whether the applicable alleged incidents of hostile work environment in those respective cases were individually subject to the *statute of limitations*, not whether alleged specific incidents of hostile work environment are individually subject to the requirement of *administrative exhaustion*. But there can be little doubt

---

[9] To this end, Plaintiff is incorrect that her "two 2018 non-selections" constitute exhausted incidents supporting a hostile work environment claim. A non-selection or refusal to hire is a discrete act, which "cannot properly be characterized as part of a continuing hostile work environment." *Sasse v. U.S. Dep't of Lab.*, 409 F.3d 773, 783 (6th Cir. 2005); *see also Taylor v. Donahoe*, 452 F. App'x 614, 620 (6th Cir. 2011) ("First, the alleged wrongs identified by plaintiff represent discrete acts of alleged retaliation (or discrimination) rather than acts contributing to a hostile work environment."). This makes perfect sense. A hostile work environment is created by *conduct*—namely, "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). That is to say, it is the sufficient accumulation of this sort of conduct that eventually amounts to a hostile work environment. And it is *this* sort of conduct—to repeat, discriminatory intimidation, ridicule, and insult—that contributes to a finding of a hostile work environment. And employment actions such as non-selection, by *themselves*, simply don't fit that description. True, such actions could be motivated by discriminatory intent (and thus violate Title VII), and such discriminatory intent may be proven in part by prior discriminatory intimidation, ridicule, and insult. But that does not mean that the actions themselves constitute acts of discriminatory intimidation, ridicule, and insult. And so it makes sense that an employment action itself (as distinguished from any surrounding circumstances indicating that the action constituted illegal discrimination) is not evidence of a hostile work environment.

Accordingly, while these two non-selections can serve as the adverse employment actions for a retaliation claim, they cannot simultaneously serve as acts supporting a hostile work environment claim.

that the same principle applies to the latter question, given the close relationship between the statute of limitations and the exhaustion requirement. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice[,]'" and so "it does not matter . . . that some of the component acts of the [alleged] hostile work environment" were not administratively exhausted, as long as the overarching claim of hostile work environment (the alleged "unlawful employment practice" at issue) was administratively exhausted. *Morgan*, 536 U.S. at 117.

In the present case, Defendant acknowledges that Plaintiff has exhausted "incidents raised in support of [her] hostile work environment claim [that] occurred between July 22, 2016 and March 8, 2017." (Doc. No. 28 at 8). And under the principle of *Morgan,* this means that Plaintiff has exhausted her claim of hostile work environment and all supporting incidents regardless of the date they occurred, so long as the incidents alleged "are part of the same (alleged) actionable hostile work environment." *Morgan*, 536 U.S. at 115. Defendant has failed to make an argument that any particular incident Plaintiff alleges in her Complaint is not part of the same hostile work environment (the same unitary unlawful employment practice) that was exhausted. Accordingly, Plaintiff can support her hostile work environment claim with any incident (other than discrete unlawful employment actions such as particular non-selections) alleged in the Complaint regardless of whether it occurred before, during, or after the July 22, 2016 to March 8, 2017 period.[10] Defendant's Motion will be denied as to Plaintiff's claim for hostile work environment.

---

[10] Plaintiff's argument that "any acts of discrimination, hostile work environment, or reprisal occurring before the 45-day statute of limitations are relevant and admissible background evidence" is partially correct and partially incorrect. (Doc. No. 39 at 15). The argument is incorrect for acts supporting a claim of hostile work environment, which as discussed above, are not time-barred (or barred by a failure to exhaust) so long as "an act contributing to the claim occurs within the filing period [or is administratively exhausted]." *Morgan*, 536 U.S. at 117. However, the argument is correct insofar as it references discrete acts. The *Morgan* Court noted that, "discrete discriminatory acts are not actionable if time barred, even

## CONCLUSION

For the reasons discussed herein, the Motion will be **GRANTED** in part and **DENIED** in part. Specifically, the Motion will be GRANTED insofar as it seeks dismissal of Plaintiff's "*per se* retaliation" claim premised on Director Vedral-Baron discussing Plaintiff's case during an agency webinar and any retaliation claims premised on adverse employment actions that occurred *before* Plaintiff initiated the EEO process. These claims will be dismissed without prejudice.[11] The Motion will be DENIED as to everything else.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

when they are related to acts alleged in timely filed charges." *Id.* at 113. However, those acts can be used "as background evidence in support of a timely claim." *Id.*

[11] The Court is aware that dismissals granted under Rule 12(b)(6), like this one, generally are dismissals with prejudice. However, (as the Court has found), a dismissal for failure to exhaust is properly grounded on Rule 12(b)(6)—considering the lack of any better alternative—but that does not mean that it has to be a dismissal with prejudice. A dismissal for failure to exhaust administrative remedies is not a dismissal on the merits the way most Rule 12(b)(6) dismissals are. As a dismissal not on the merits, a dismissal for failure to exhausted in properly without prejudice, which is why the cases are legion that make such a dismissal without prejudice. *E.g., Morris v Newberry Corr. Facility*, No. 11-10938, 2013 WL 865540, at *2 ("[U]nlike the typical 12(b)(6) motion, dismissal [for failure to exhaust] is without prejudice.").